**ALBERT Y. DAYAN**  
*Attorney at Law*

80-02 Kew Gardens Rd., # 902, Kew Gardens, N.Y. 11415

Tel: (718) 268-9400:   Fax: (718) 268-9404

December 28, 2015

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York. New York 10007

Re:  **United States v. Albert Baratov - 15 Cr. 421 (PKC)**

Dear Judge Castel:

This Sentencing Memorandum is submitted in the form of a letter in connection with the upcoming sentencing of Mr. Baratov scheduled for January 8th, 2016.

Pursuant to Fed. R. Crim. P. 32(i)(3) and 18 U.S.C. § 3553(a), ALBERT BARATOV respectfully submits to this Honorable Court for consideration, relevant information for determination of sentence that is no greater than necessary to achieve the goals of sentencing under § 3553(a)(2). In support, the Defendant states as follows:

As an initial matter, the Defendant pleaded guilty before this Honorable Court on July 1, 2015, to one-count information (the "Information"), charging him with a Violation of Title 18, United States Code, Section 1349, based on his participation in a conspiracy to make fraudulent loan applications to federally insured banks. Based upon the PSR, Mr. Baratov's adjusted offense level is 24 and his Criminal History Category is III. Mr. Baratov's offense involved a loss greater than $3,700,000 to the banks. In view of Mr. Baratov's timely acceptance of responsibility for his involvement in the charged offense a three- level reduction is warranted,

pursuant to U.S.S.G. sec3E1.1(a). The adjusted offense level is 24. PSR indicates that Mr. Baratov has a criminal history score of four. Accordingly, based upon the PSR, his criminal history category is III. The advisory guideline range associated with an adjusted offense level of 24 with Criminal History Category III is 63 months to 78 months of imprisonment.

I submit that the PSR calculation is inaccurate as to his Criminal History Category. Mr. Baratov should actually have a Criminal History Score of three as apposed to four because in the 2004 case he was sentenced interim probation for one year allowed by state law under a B Misdemeanor. Interim –non-reporting-- NY State probation for twelve months, which Baratov had successfully completed, vacates the conviction and all criminal charges are thereafter dismissed. Accordingly, his criminal history category should be II. The advisory guideline range associated with an adjusted offense level of 24 with Criminal History Category II is 57 to 71 months. Moreover, that in keeping with the sentencing mandate under 18 U.S.C. Sec. 3553(a), mitigating factors exist in this case demonstrating that a sentence below the Guideline calculation and U.S. Probation recommendation is warranted. The undersigned as counsel for Mr. Baratov submits that, in light of the decisions issued in cases such as United States v. Booker, 125 S.Ct. 738 (2005) and Kimbrough v. United States, 128 S.Ct. 558, 169 L. Ed. 2d 481 (2007), this Court is free to issue a sentence in compliance with 18 U.S.C. § 3553 that is fair based upon the specific facts of this case and the defendant's involvement. For the reasons here and after set forth, we are respectfully asking Your Honor to err on the side of leniency in this particular case because of the disproportionate sentencing guideline recommendation when measured with the conduct and involvement of Mr. Baratov in this case and others similarly situated in this conspiracy previously sentenced.

Mr. Baratov displayed extraordinary acceptance of responsibility by waiving indictment at the time of his arrest and immediately on the same day of his arrest pleading guilty despite the fact that almost five years had elapsed between the time of his crime and the date of his arrest. During those five years, he became a father for the first time in his life. And, as is illustrated by the letters he received in support, he is a great father. His son, helped Albert realize what is important in life. He loves his son dearly and he dreads being away from him even for a day. Mr. Baratov, however, understands that he committed a crime before the birth of his son and that he and his entire new family will now have to pay a price for Baratov's past actions. We implore Your Honor, to give Albert one more chance in his life. We appreciate that Albert has been given chances in the past, but never before he had a child to look after. He devotes his life to his son, whose birthday is on January 22, 2016. Albert dreads being away from him. Mr. Baratov is not a citizen of this country. Therefore, he will have to spend the entire eighty five percent of his time in incarceration in a medium to a high facility without the benefit of early release programs. Also, he will have to be transported to an immigration facility thereafter to spend an indefinite period of time in a high security facility without definitive current resolution as to his ultimate future. We ask Your Honor to consider that Mr. Baratov will have to go through hell before he comes out to see his son again here in the United States, if at all.

Yes he should have thought of all that before he committed his crime. But life was very different for him before the birth of his son, Michael. His son is all that Mr. Baratov talks about. Mr. Baratov is very humble, respectful, grateful and polite. Mr. Baratov is remorseful, regretful and contrite. Although he understands that it may not be possible here, Mr. Baratov prays only for a chance to return to his family so that his child would not even miss him for a day. He

3

would never take a chance to be incarcerated away from his loved ones for even one day if he had been a father during the time of his last criminal act over five years ago. He has made an attempt, as much as possible now, to show his remorse and acceptance of responsibility to our society by waiving many of his substantive rights, admitting his conduct and pleading guilty to his involvement in the offense that occurred fifty-six months prior to his arrest. In fact, he pleaded guilty on the same day as he was arrested and he waived incitement. These actions have assisted the government and the judiciary in facilitating the administration of justice. He will satisfy all conditions set by Your Honor and will never be involved in improper conduct of any kind in the future as has been demonstrated after the birth of his son for the past five years.

As is transparent in the letters attached hereto, his life evolves in work and service of his immediate family and, when he is able, in the service of others who are in need of moral support. Albert Baratov was born on September 10, 1975, in Tashkent, Uzbekistan, in what was formerly the Soviet Union. He is one of two children born to the marital union of Mikhail Baratov, age 66, and Svetlana Baratov (nee Aranova), age 61, a resident of Queens, New York. His father is a retired cab driver, who worked his body to debilitation behind a wheel and suffered a stroke previously, and currently suffers from diabetes and heart problems. Albert Baratov's mother, a homemaker, has been ill for the past ten years. His mother was diagnosed with thyroid cancer, heart problems, and a heart arrhythmia. Her legs are very swollen and she is unable to walk even with the assistance of a cane or walker. His brother, Arthur, age 33, is married and has three children. Arthur is a hair stylist and photographer and lives in Ridgewood, New York. ( His family, as members of the Jewish minority in a former Muslim region of Dagestan USSR, lived under constant threat of discrimination, physical abuse and persecution). At the age of fifteen, Mr. Baratov relocated from the Soviet Union to New York City, and he and his brother

4

did not know how to speak English and because of this he sometimes became involved in physical altercations with other students. When Albert Baratov was 29 years old, he met a woman named Anna Diamantakos and started a relationship. They were married on December 27, 2008 at City Hall in Manhattan. They have one son, who is four years old and is enrolled in pre-kindergarten. Mr. Baratov underwent a surgery in 2010 for a torn left meniscus. He is suffering from a bone spur for the last two years.

As this Court is aware, in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure was to declare the Guidelines merely advisory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). After Booker, federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. §3553(a)(2). In Nelson v. United States, 129 S.Ct. 890 (2009/0, the Supreme Court reemphasized that the guidelines are both advisory and not to be presumed reasonable.

Mr. Baratov completely accepts responsibility for his conduct in this case. He has matured as a man and a father. Even when the Guidelines were mandatory, post-offense rehabilitation was a permissible ground for a downward departure. United States v. Garcia, 926 F.2d 125 (2nd Cir. 1991); United States v. Rudolph, 190 F.3d 720, 722-23 (6th Cir 1999); United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998;.
After the Guidelines were made advisory, this conduct becomes even more important at sentencing. Remorse is also a factor the Court may consider. United States v. Fagan, 162 F.3d

5

1280,1284-85 (10th Cir. 1998). Under the old departure analysis, "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree." Becoming a father and loving someone and something greater than himself is a cold awakening for him during this time of sentencing where he stands to lose everything dear to him indefinitely. Based on his new family ties and upon his post arrest actions, it is extremely unlikely that he will commit another violation or crime in the future. He has displayed respect and obedience for pre-trial rules and regulations during this entire case. Counsel for defendant respectfully asks that this Court take these factors into consideration under § 3553(a) in determining that a sentence for Mr. Baratov.

We submit that the Guideline range and the recommendation of the Department of Probation in this case is greater than necessary, to achieve the goals of sentencing under 18U.S.C. § 3553(a). Accordingly, the Defendant respectfully requests that this Court take into consideration the above factors and sentence Mr. Baratov with parody of co defendants similarly situated in this conspiracy. On December 10, 2012, Stavros Lampropoulos (P65227/S.G. Jones) appeared before the Honorable Denise L. Cote and pleaded guilty to Counts 1 and 2 of 12 CR 910 (DLC) [Conspiracy to Commit Bank Fraud, and Bank Bribery]. On April 19, 2013, Lampropoulos was sentenced before the Honorable Denise Cote to one year and one day of imprisonment, followed by three years' of supervised release. Restitution of $2,025,684.46 was ordered. On November 27, 2012, Samuelson Estabillo (65101/K.C. Singleton) appeared before the Honorable Katherine B. Forrest and pleaded guilty to Count 1 and 12 CR 880 (KBF) [Conspiracy to Commit Bank Fraud]. On April 19, 2013, Estabillo was sentenced before the Honorable Katherine B. Forrest to 12 months and one day imprisonment,

followed by two years' supervised release. Restitution of $800,000 was ordered. On December 18, 2012, Socrates Antoniou (P65294/J. Mullen) appeared before the Honorable Alison J. Nathan and pleaded guilty to Counts 1 and 2 of S1 12 CR 958 (AJN) [Conspiracy to Commit Bank Fraud, and Bank Bribery]. On June 7, 2013, Antoniou was sentenced before the Honorable Alison J. Nathan to Time Served (two days) and three years' supervised release. Restitution of $1 million was ordered. On December 28, 2011, Thomas Nuccio (P61620/C.T. Ferrall) appeared before the Honorable Michael H. Dolinger and allocuted to his criminal conduct as charged in Counts 1 and 6 of S1 11 CR 297 (RPP) [Conspiracy to Commit Bank Fraud and one substantive count of Bank Fraud]. On May 14, 2012, before the Honorable Robert P. Patterson, Nuccio was sentenced to one year and one day of imprisonment (on each count, concurrent), followed by three years' supervised release on each count, concurrent. Restitution of $500,000 was ordered. On December 21, 2011, Jagdesh Cooma (P60270/Z. Wilson) appeared before the Honorable Ronald L. Ellis, and allocuted to his criminal conduct as charged in Count 1 only of S1 11 CR 297-02 (RPP) [Conspiracy to Commit Bank Fraud]. On June 15, 2012, he was sentenced to 37 months' imprisonment and two years' supervised release, by the Honorable Robert P. Patterson. Restitution of $8.2 million was ordered. On December 22, 2011, Christopher Cavounis, appeared before the Honorable Ronald L. Ellis, and allocuted to his criminal conduct as charged in S1 11 CR 297-01 (RPP) [Conspiracy to Commit Bank Fraud; Bank Fraud (five counts); and Bank Bribery]. On June 14, 2012, Mr. Cavounis, for reasons and predicate acts that are unrelated to Baratov, was sentenced to 97 months' imprisonment and two years' supervised release, by the Honorable Robert P. Patterson. Restitution of $7,931,495.60 was ordered.

Respectfully submitted,

Albert Dayan, Esq.
Attorney for the Defendant
80-02 Kew Gardens Road, Suite 902
Kew Gardens, New York 11415
(718) 268-9400 (voice)
(718) 268-9404 (facsimile)
dayanlaw@aol.com

cc. David Raymond Lewis
    Assistant United States Attorney