G184Bars

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4             v.                            15 CR 421 (PKC)

5   ALBERT BARATOV,

6                 Defendant.

7   ------------------------------x
                                           New York, N.Y.
8                                          January 8, 2016
                                           2:20 p.m.
9

10  Before:

11                  HON. P. KEVIN CASTEL,

12                                         District Judge

13

14

15                    APPEARANCES

16
    PREET BHARARA
17       United States Attorney for the
         Southern District of New York
18  DAVID RAYMOND LEWIS
         Assistant United States Attorney
19

20  ALBERT Y. DAYAN
         Attorney for Defendant
21

22
    ALSO PRESENT:  MATTHEW AMMANN, Criminal Investigator, IRS
23

24

25

2

G184Bars

1              (In open court)

2              THE DEPUTY CLERK:  United States of America against

3    Albert Baratov.

4              Is the government ready?

5              MR. LEWIS:  Good afternoon, your Honor.  David Raymond

6    Lewis for the government.

7              THE COURT:  Good afternoon, Mr. Lewis.

8              For the defendant?

9              MR. DAYAN:  For the defendant, Judge, I am Albert

10   Dayan.

11             THE COURT:  Good afternoon, Mr. Dayan.  Good

12   afternoon, Mr. Baratov.

13             Mr. Dayan, what I want to do is go through the

14   materials I have, and the question will be whether I have

15   everything I should have.

16             I have a presentence report, recommendation, and

17   addendum approved by probation, or at least transmitted by

18   probation on or about October 30, 2015.  I have a memorandum

19   from the government on the subject of sentencing transmitted

20   November 30.  I have a letter from you dated December 28, 2015,

21   along with letters from family members and others.  I have a

22   consent preliminary order of forfeiture, and I have an order of

23   restitution, or at least proposed orders along those lines.

24             Do I have everything I should have?

25             MR. DAYAN:  You do, Judge.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

G184Bars

1          THE COURT:  Has the defendant, in fact, read,

2    reviewed, and discussed with you the presentence report,

3    recommendation, and addendum?

4          MR. DAYAN:  He has.

5          THE COURT:  Does the defendant have any objections to

6    the facts set forth in the presentence report?

7          MR. DAYAN:  I'm not sure if we could really call it an

8    objection because there is a fact in the PSR that is relied

9    upon.  It is his conviction from 2005, I believe.  It is

10   impossible to get the records from that conviction.  My office

11   tried to get the court minutes.  I heard that the court officer

12   had retired, the court --

13         THE COURT:  Reporter/stenographer?

14         MR. DAYAN:  The stenographer.  We couldn't get it, but

15   we also can't get the judge sort of to agree that that is what

16   happened because he is no longer there.

17         THE COURT:  Agreed what happened?

18         MR. DAYAN:  What happened was the defendant had

19   entered a conditional plea, the condition being that if he

20   stays out of trouble for a year, the B misdemeanor, which is a

21   crime for sentencing guideline calculations, would get vacated,

22   and he would walk away with a disorderly conduct.  That would

23   take him from criminal history category from III to II.  That

24   is the only objection we have.  It is not because we are in

25   disagreement with the probation officer; it is just we can't

G184Bars

1    get the records except for my own representation because I

2    actually had represented the defendant at that proceeding,

3    Judge.

4              THE COURT:  I guess I am not entirely understanding.

5    Is the case accurately described in paragraph 39?

6              MR. DAYAN:  It is accurately described, but the

7    disposition of that case is not accurate.

8              THE COURT:  All right.  It says one year conditional

9    discharge on disorderly conduct and one year conditional

10   discharge, two-year order of protection, and $200 fine on

11   attempted assault in the third degree.  What portion of that is

12   not accurate?

13             MR. DAYAN:  He did plead guilty to the attempted

14   assault, but it was a conditional plea.  Under state law, your

15   Honor, only under a B misdemeanor, which is attempted assault

16   in the third degree, you're allowed to be sentenced to what's

17   called interim probation.  He was sentenced to interim

18   probation for a year.  He successfully completed that interim

19   probation.  So, then, the B misdemeanor would have to get

20   vacated to have a noncriminal disposition of a disorderly

21   conduct, which is not computated, should not be computated

22   towards his criminal history category.

23             THE COURT:  You contend that where it says here that

24   on October 18, 2006, which is described as the date of sentence

25   and the imposed disposition, that it is not accurate to say he

G184Bars

1    received the one-year conditional discharge on disorderly

2    conduct and one year conditional discharge and two-year order

3    of protection and $200 fine on the attempted assault in the

4    third degree?

5              MR. DAYAN:  Correct, Judge.

6              THE COURT:  What do you contend it should say?

7              MR. DAYAN:  It should say that ultimately the

8    attempted assault, which is a class B misdemeanor, the lowest

9    criminal conviction, you can get under state law --

10             THE COURT:  Does it say all of that, the lowest

11   conviction?  I'm asking you what you believe the presentence

12   report should say.

13             MR. DAYAN:  It should say that the conviction was

14   ultimately vacated.  In other words, the criminal conviction

15   should ultimately have been vacated.  There is no criminal

16   conviction with that case.

17             THE COURT:  All right.  Let me hear from Mr. Lewis.

18             MR. LEWIS:  Your Honor, I hope this helps rather than

19   hinders.  I think another way to perhaps articulate what

20   Mr. Dayan is trying to say is, I think as a factual matter, I

21   think the PSR is factually correct in describing the sentence

22   that was imposed.  I really take Mr. Dayan to be making more of

23   a legal argument that says that a one-year conditional

24   discharge that is then downgraded to disorderly conduct ought

25   not receive one point of criminal history.  That is what I take

G184Bars

 1   him to be saying.  I don't think he is saying the PSR is

 2   inaccurate.

 3          MR. DAYAN:  They're describing what is part of the

 4   public record, right, but since I was there, I'm just making a

 5   representation, because I was there during sentencing, and that

 6   was the sentence ultimately, that the criminal conviction would

 7   be vacated, but it is not part of public record, and we can't

 8   restore it because the court reporter is not available.  There

 9   is no record to support what I'm saying except what I'm saying,

10   Judge.

11          THE COURT:  The two of you don't sound like you're

12   saying the same thing.

13          Go ahead, Mr. Lewis.

14          MR. LEWIS:  Let me say something slightly different

15   then.

16          The government would not object, your Honor, if your

17   Honor chose to not include that one criminal history point.  If

18   you don't include that one criminal history point, you end up

19   with a total of three criminal history points, which is at

20   criminal history category II rather than criminal history

21   category III.

22          THE COURT:  So without objection, I will delete the

23   criminal history point in paragraph 30, leave the text

24   otherwise in place in paragraph 41, change the number to 3.

25   The number 4 appears twice in paragraph 41.  And then change

7

G184Bars

1    Roman numeral III to Roman numeral II.  Is that what the

2    government is suggesting?

3              MR. LEWIS:  We would have no objection to those

4    changes, your Honor.

5              THE COURT:  Does that fully satisfy the defendant's

6    point?

7              MR. DAYAN:  Yes, Judge, it does.  Thank you.

8              THE COURT:  All right.

9              That also changes paragraph 76, III to II.  And if I'm

10   correct, that would change the guideline range, in so far as

11   imprisonment is concerned, to 57 months to 71 months.  Is that

12   correct, Mr. Lewis?

13             MR. LEWIS:  We agree with that, your Honor.

14             THE COURT:  Is that correct Mr. Dayan?

15             MR. DAYAN:  It is.  Thank you, Judge.

16             THE COURT:  Those changes will be made in the

17   presentence report.

18             With those changes, does the defendant have any other

19   objections or any objections now to the presentence report or

20   to the guideline calculation in the presentence report?

21             MR. DAYAN:  We do not, Judge.  Thank you for asking.

22             THE COURT:  Same question for the government.

23             MR. LEWIS:  No, Judge, no factual issues.  There are

24   some technical things we will talk about.

25             THE COURT:  If there are technical things, tell me

G184Bars

1    about it.  Restitution, does that need to be changed?

2                MR. LEWIS:  I believe that it does, your Honor.  In

3    the consent preliminary order of forfeiture money judgment that

4    we handed up and the order of restitution, we included the

5    number 1.3 million in both.  That is also the number that is

6    throughout the plea agreement to which the defendant pled

7    guilty.  I don't want to say that the PSR is wrong, but where

8    it says that 2.8 million is a potential restitution order, the

9    government is not seeking the 2.8 million in restitution; we're

10   seeking 1.3.

11               THE COURT:  So why don't I strike the words,

12   "according to the government" through the word "however" --

13               MR. LEWIS:  I'm sorry.  Where is it, Judge?

14               THE COURT:  Paragraph 21.  The sentence will read,

15   "The defendant has agreed to make restitution payments of."

16               MR. LEWIS:  Yes.

17               THE COURT:  Okay.  The change will also be made on

18   page 21, the sentencing recommendation.

19               MR. LEWIS:  Yes, your Honor.

20               THE COURT:  Okay.  With that, does the government have

21   any objections to the facts set forth in the presentence report

22   or to the revised guideline calculation?

23               MR. LEWIS:  No, your Honor.

24               THE COURT:  All right.  I adopt as my findings of fact

25   the facts as set forth in the presentence report with the few

9

G184Bars

1    amendments which I have made on the record today; and further,

2    I adopt the revised guideline calculation, which places the

3    defendant at total offense level 24, criminal history category

4    II.

5         I will now give Mr. Dayan an opportunity to speak on

6    behalf of the defendant.

7         Before I do that, I think it would be appropriate to

8    set the stage by giving Mr. Lewis an opportunity to speak

9    because I have a question I want to put to him, and then I will

10   have Mr. Dayan speak, and then Mr. Baratov, and I will give the

11   last word to Mr. Lewis.

12        But the question I have for Mr. Lewis is:  I read the

13   presentence report.  I see that the amount of the intended loss

14   exceeded 2.5 million but was less than 7 million; that the

15   defendant received 1.3 million as a result of the offense

16   conduct, and I also see the range of sentences for the

17   defendants outlined in paragraphs 6 through 11, and I note that

18   Mr. Cavounis is described as a mastermind.

19        Where in the government's view does the defendant's

20   conduct lie relative to the culpability of, for example,

21   Mr. Cooma, on the one hand, I guess Mr. Cavounis, who is at the

22   top, and then the other defendants who received a year and a

23   day, Estabillo, Lampropoulos, and Nuccio?

24             MR. LEWIS:  I get like there were four others.

25             THE COURT:  There is another one, the individual who

G184Bars

1  got time served.  I thought you were going to tell me something

2  that would put that sentence in a distinguishing category but

3  go ahead.  Antoniou, you can start with him.

4          MR. LEWIS:  All right.  Judge, my understanding is

5  that each of the individuals -- do you mind if I start with

6  Mr. Cavounis?

7          THE COURT:  Go ahead.

8          MR. LEWIS:  Mr. Cavounis is clearly the ringleader and

9  in a category by himself.  Not relevant here.  He got a

10  sentence far higher than anybody else, and the government

11  believes that that is as it should be.

12          Mr. Cooma, who received a sentence of 37 months, my

13  understanding is his role primarily involved the preparation of

14  actual false documents on a computer.  He was apparently quite

15  good with creating false documents and so forth.

16          I think I would sort of next mention Mr. Baratov.

17  Mr. Baratov did play a role in bringing others into the scheme;

18  in particular, a corrupt accountant, who played an important

19  role in carrying forth a number of the loans.  The loans are

20  sort of episodic.  There's a series of 12 of them.

21          THE COURT:  I think there are seven that this

22  defendant participated in, if I remember correctly.

23          MR. LEWIS:  That sounds about right to me, Judge.

24  Where are you getting that from?  I'm sorry.

25          THE COURT:  My recollection of having read the

G184Bars

1    presentence report.  That is where it comes from.

2              MR. LEWIS:  As to the individuals after Mr. Cooma and

3    Mr. Baratov, you got Nuccio -- I can't pronounce them, either.

4              THE COURT:  It is paragraph 19.

5              MR. LEWIS:  Yes, Judge.  And that says seven episodes

6    out of I think a universe of maybe 12 or 14.

7              I think that Mr. Baratov is more culpable than the

8    last four fellows, the fellows mentioned in paragraphs 9, 10,

9    11, and 12.  Each of them was a straw purchaser in one or more

10   specific loans.  That said, Mr. Baratov -- I don't think he is

11   more culpable than Mr. Cooma, who got 37 months.

12             THE COURT:  Do you know what Mr. Cooma's criminal

13   history category was?

14             MR. LEWIS:  I do not, Judge.

15             THE COURT:  All right.  So we don't know whether he

16   was in a higher or lower criminal history category or the same

17   criminal history category as this defendant?

18             MR. LEWIS:  Judge, could I have just a minute?

19             THE COURT:  Yes, you can.

20             (Pause)

21             MR. LEWIS:  Judge, neither I nor the agent can say for

22   certain, but neither of us believes that Cooma had a record.

23             MR. DAYAN:  This is upon information and belief.  We

24   believe he had a prior conviction for credit card fraud, but I

25   have no papers to document that.

G184Bars

1          THE COURT:  Right.

2          MR. LEWIS:  Mr. Baratov was pretty forthright about

3   his conduct.  He did come in.  He did meet with us.  But that

4   kind of forthrightness, it gets him three points for

5   acceptance.

6          Because of the plea agreement and so forth, Judge, our

7   formal position is a sentence within the guidelines is

8   appropriate here, but I look not only at the PSR but also

9   frankly the paragraph in the defense submission where he goes

10  through all the other sentences, and nobody got a sentence

11  close to 57 months except for Mr. Cavounis.

12         THE COURT:  Let me say that, certainly if the one

13  individual did not have a criminal history that placed him

14  outside of criminal history category I, then that might explain

15  some things.

16         Can you tell me something about the degree of personal

17  gain from the scheme?

18         If I understand this, Mr. Baratov took 1.3 million out

19  of the scheme.  He actually got 1.3 million.  Do you know what

20  the others actually got; for example, what Cooma got?  I see

21  there was restitution of 8.2 million, but that could be

22  plausibly from the fact that he prepared false documents.  It

23  doesn't necessarily mean that he walked away with that amount

24  of money.  He may have been the guy who prepared the documents

25  that enabled the loss, and it is fair that he is on the hook

G184Bars

1   for the $8 million.

2            MR. LEWIS:  Our understanding, your Honor, is that

3   Mr. Cooma received substantially less as his personal take, but

4   as you can see from the $8.2 million restitution order, he was

5   involved in substantially more of the loans than Mr. Baratov.

6   I think it is also fair to infer that his offense level was

7   higher than Mr. Baratov's.  I'm going to infer that the loss

8   amount was found to be over 7.5 million, which would have given

9   him an offense level of 26.

10           THE COURT:  All right.  Anything else on this subject

11  area?

12           MR. LEWIS:  No.

13           The agent is reminding me, Judge, the one other

14  defendant who is sort of distinguishable, Mr. Lampropoulos is

15  different than the others in that he was a corrupt Citibank

16  employee who took a bribe in order to let some of these

17  mortgages happen.

18           THE COURT:  You may be seated.  Bear with me for a

19  moment.

20           According to the government's memorandum filed in the

21  case of Mr. Cooma, they reported that the base offense level

22  was 7, which was increased by 16 levels because the loss amount

23  exceeded a million but was not more than two and a half

24  million.

25           MR. LEWIS:  For which defendant, your Honor?  I'm

G184Bars

1        sorry.

2                    THE COURT:  Cooma.

3                    MR. LEWIS:  Okay.

4                    THE COURT:  Resulting in a total adjusted offense

5        level of 20, according to the government; and that he had

6        larceny conviction for possession of a forged instrument, which

7        was committed while on probation; and that he, therefore, was

8        in criminal history category II, which yielded a guideline

9        range of 37 to 46 months.  Judge Patterson imposed the bottom

10       end of the guidelines, it would appear.  I'm looking at the

11       government's submission of June 13, 2012.  I'm also looking at

12       Mr. Cooma's submission, which confirms that the guideline range

13       was 37 months to 46 months.

14                    I take it, Mr. Lewis, you were not on this case at the

15       time; is that right?

16                    MR. LEWIS:  That's correct, your Honor.

17                    THE COURT:  Okay.

18                    MR. LEWIS:  I apologize, Judge, for not having those

19       facts at my fingertips.

20                    THE COURT:  Now we know a little bit more about

21       Mr. Cooma.  Judge Patterson appears to have given him, in terms

22       of his sentence, a sentence at the lowest end of the advisory

23       guideline range.

24                    Let me hear from Mr. Dayan.

25                    MR. DAYAN:  Thank you, Judge.

G184Bars

1          I know I had outlined this in my letter, Judge, and

2     I'm not sure if it should play a role in your Honor's decision.

3     The defendant here, Judge, Mr. Baratov is not a citizen.  For

4     example, someone like Mr. Cooma, who was sentenced to

5     37 months, was home in about 12 months because of all the

6     programs that are available to United States citizens.

7     Mr. Baratov, on the other hand -- again, I'm not suggesting

8     that your Honor should consider it -- but this is something

9     that should be out there.  He would have to do his entire 85

10     percent in medium to high security.

11          THE COURT:  Will he be deported at the conclusion of

12     his sentence?

13          MR. DAYAN:  I can't say exactly he will or will not

14     be, but it is probable because he is currently on immigration

15     probation pending this conviction and sentencing.  They will

16     again put a detainer on him.  Regardless of whether they will

17     deport him or not, they will transfer him to an immigration

18     facility, which in my research shows it is an extremely harsh

19     condition.  It is another minimum of nine months even if he is

20     subject to release.

21          I just wanted to lay those facts out, your Honor, in

22     connection to other defendants who may at first glance appear

23     to be similarly situated but they really are not.

24          I want to start with Mr. Baratov coming to this

25     country, Judge, when he was 15 years old.  At 15 years old,

G184Bars

1    coming to the United States, Judge, it is a very difficult time

2    to come.  First of all, it is very difficult to really get into

3    education and acquire a new language.  He found himself really

4    lost because his father started to drive a cab, as I have

5    described in my papers, Judge.  He worked anywhere from

6    18 hours to 20 hours a day just to make ends meet for the

7    family.  Mr. Baratov, who didn't speak English, at 15 -- Judge,

8    and I'm sure you will remember -- it is a very volatile age for

9    young men, it is really a decisive age whether they make the

10   right decisions or not, and guidance is very important.  He

11   didn't have guidance.  He dropped out of high school at 16.  He

12   spent less than a year in the United States educational system,

13   Judge.  He met the wrong people.  One thing led to another.  He

14   did get himself involved in violent criminal activity, Judge.

15   It is there.  I must deal with it.  I don't want to slide over

16   it.

17           I just began my practice back then.  Since I knew his

18   dad and I knew his family, I was very much involved in

19   defending this man back then.  I was an inexperienced lawyer,

20   but he was a very young man.  I know it is tough to say a good

21   young boy because of the crimes he was involved in.  He was

22   very naive, a very trustworthy guy.  You could trust him like

23   you could trust a dog.  He was that type of a young man.  And

24   he was recruited by these two brothers who were Russian

25   speaking brothers, and they sort of like seduced him.  I'm not

G184Bars

1    mitigating what he did.  I'm not dodging responsibility.  He

2    got involved with this family, and they used him to do the

3    dirty work, like to go in with a gun.  Again, Judge I'm not

4    mitigating what he did.  I want to give you a little background

5    of what happened to him.

6            Obviously, when he went to do the time, the reason

7    they chose this young man, because he just knew how to keep his

8    mouth shut, and they knew it.  He was just a loyal young man

9    who had no guidance from anyone.  He realized that when he came

10   out of prison.  When he was in prison, he realized that all of

11   the people that he kept his mouth shut basically abandoned him.

12   Nobody helped him.  Nobody paid for his lawyer.  His father

13   couldn't afford a lawyer.  He realized that, Judge.  When he

14   came out, he never again went to do any type of violent

15   activity.  I'm going back 20 years.

16           He did have an altercation for which I defended him.

17   This was the subject of our discussion on the PSR.  It was in

18   2005.  The way that fight occurred, it was in Nassau County,

19   there was a little dispute on the road.  The driver of the

20   other vehicle came out.  The guy was like 6'2".  He was a

21   bouncer.  They got a little hostile with each other.  There was

22   no case against Mr. Baratov.  Whatever he did, that was purely

23   in self-defense because the other person hit Mr. Baratov's car,

24   and Mr. Baratov came out.  If there were a case in Nassau

25   County, they would have prosecuted him to a full extent.

G184Bars

1   Instead, they resolved this case by way of a disorderly

2   conduct, which is a violation, it is not even a crime.  This

3   case should have been sealed in a year.  This case wasn't for

4   clerical errors that I described earlier.

5           With that background, Judge, Mr. Baratov finds himself

6   in this position:  An uneducated young man.  He can't write

7   well, can't read well.  He meets Mr. Cavounis.  Mr. Cavounis,

8   who was the mastermind of this thing, needs an accountant.

9   Mr. Baratov introduces him to the accountant.  Based on that

10  introduction, Mr. Cavounis says, I'm going to give you a

11  commission with everything we do with this account.  You will

12  make a commission.  That is really the extent of Mr. Baratov's

13  involvement.  I understand that overall the scheme is very

14  sophisticated, but his involvement is far from sophisticated,

15  Judge.  They gave him whatever they wanted to give him.  He did

16  make the money, Judge.

17          My proposition to your Honor -- again, it is difficult

18  to do, it would have been difficult for me to do if I wasn't a

19  father myself.  But really a child in a man's life can change

20  that man completely.  This is what happened with Mr. Baratov.

21  I know when I asked your Honor in my writing, give him one more

22  chance, it is a natural reaction:  What are you talking about,

23  Mr. Dayan?  Look at this guy's history.  What are you talking

24  about a chance for?  But I submit to your Honor because I know

25  him, and objectively and subjectively, he is a completely

G184Bars

1    different person after the birth of his son Michael.  That is

2    all he ever talks about when he is in my office.  What about my

3    son?  How can he grow up without me?  The most important thing

4    that Mr. Baratov appreciates, that the best way to educate your

5    son is not by telling him, do this or don't do that.  It is

6    really by example.  He really, really stresses over the

7    possibility, perhaps probability, that the young boy will grow

8    up recognizing, truly recognizing, that his father is in

9    prison, his father is in prison.  And that's the worst example,

10   and that's the worst message that Mr. Baratov wants to send to

11   his son.  Mr. Baratov married into a wonderful family,

12   everything in his life just came full circle for him now.

13            I understand and he understands, Judge, that he

14   committed a terrible crime; that there are victims in this

15   case, and that there are victims beyond the banks in this case,

16   and he will have to pay the price.  But I ask your Honor truly

17   to consider that, whatever your sentence will be, to take into

18   consideration that he may never again be able to see his son

19   here in the United States, to give him this one more chance, so

20   he can come out and be with his son and show him what it means

21   to be a good father.

22            THE COURT:  What would that be?  If I gave him time

23   served, if I gave him any sentence, supervised release,

24   probation, he's subject to deportation.  Correct?

25            MR. DAYAN:  Correct.

G184Bars

1          THE COURT:  Okay.

2          MR. DAYAN:  Yes, Judge, he is subject to deportation.

3     But he can fight it.  You see, when you do it from jail, it is

4     such a horrendous treatment.  They treat you like -- they sort

5     of like drag you into another system.  They keep you there.

6          THE COURT:  Why is it unjust for him to be deported?

7     Why should I be concerned about stepping out of a role of

8     neutrality here where I take no position on the issue to

9     assisting him in fighting deportation?

10          MR. DAYAN:  It takes a tremendous leap of faith,

11     Judge, into believing that a man can change, and his change

12     will benefit our society, not just only him as a man, which I

13     would suggest respectfully could be enough, but he would

14     benefit our society because he would raise a great son, an

15     American citizen, perhaps have other children, and himself be

16     obligated to repay the money that he had pocketed, go into

17     rehabilitation through programs.  Five years on probation,

18     Judge, that means we test what he eats, we test the fluids that

19     come out of his body.

20          THE COURT:  Does he need that?

21          MR. DAYAN:  I think that it would be in two ways.  I

22     would suggest yes.  Two ways:  One, as indicated by his wife's

23     letter, that she wants him to be rehabilitated because he did

24     develop --

25          THE COURT:  What would testing him do to rehabilitate

G184Bars

1      him?

2            MR. DAYAN:  He would have to report regularly to

3      probation.

4            THE COURT:  How does that rehabilitate him?

5            MR. DAYAN:  It makes him realize that somebody is

6      watching him.  He has to account for every minute of his day.

7      I would suggest, your Honor, that that is also rightfully

8      justified punitive.

9            THE COURT:  How is that punitive?

10           MR. DAYAN:  Judge, I can barely sustain having to

11     answer to my wife what I do all day and where I have been, but

12     a probation officer that is on your back 24/7, telling you

13     where you can go, whether you're gainfully employed, checking

14     on your bills, checking on whether you're working, what you're

15     doing with the money, where you're living, where you're

16     sleeping.  I think the United States v. Gull, a justice of

17     concurrent jurisdiction as your Honor had declared, Judge, that

18     probation is not a walk in the park.  That is punitive and

19     rehability in nature.

20           I know I'm asking for a miracle, Judge.  I appreciate

21     that.  And before I walked into this courtroom, I didn't know

22     if I could look your Honor straight on the bench and be able to

23     ask you for it, but I'm asking you most sincerely, Judge, give

24     this man one more chance.  For 60 months of his life -- 60

25     months is a lot of time, Judge.  The man is only -- I think he

G184Bars

1    is 40 now.

2              THE COURT:  He is 40.

3              MR. DAYAN:  That is up to 50, almost 46.  That's

4    watching his every step, watching what he is doing.

5              I ask your Honor, please, just one more chance for

6    this man.  And I said in my letter, he just came in, he didn't

7    even litigate the case.  He said, I did it, that's it.  It's

8    me.  You got me.  I'm not even going to raise issues, any other

9    issues.  I'm yours.

10             I have said all I could, Judge, and I appreciate you

11   listening to me.

12             THE COURT:  All right.  Thank you.

13             Mr. Baratov, this is your opportunity to speak to

14   address the Court directly to bring to my attention any facts

15   or circumstances that you believe I should take account of in

16   passing sentence upon you today.  If there is anything you wish

17   to say, this is the time to say it.

18             THE DEFENDANT:  Yes, your Honor.  Thank you very much.

19             First of all, I would like to apologize to this Court

20   and to all the victims that were affected by my conduct in this

21   case.  And I want to apologize to my family, to my wife.  I

22   know I put them through a lot, everybody through a lot.

23   However, your Honor, I also want to tell you that I'm

24   sincerely, sincerely sorry for everything that I have done.

25   And I know that you're aware that I welcomed a beautiful angel

G184Bars

1    in my life, my son, which I am incredibly in love with.  Every

2    night of my life I go to sleep with that kid.  And I know that

3    I benefited.  I took the money.  And I promise -- I'm actually

4    working on something that I can -- from the first day that it

5    happened, I said to my wife, to my family, I will repay every

6    penny back.

7                That's it, your Honor.

8                THE COURT:  All right.  Thank you, sir.

9                This is the government's opportunity to speak.

10               MR. LEWIS:  Judge, I don't think that the government

11   has anything to add beyond what we have already put forth.

12               THE COURT:  This is the Court's statement of reasons

13   for the sentence to be imposed on Albert Baratov.

14               In sentencing the defendant, I have considered all of

15   the materials I referenced at the outset.  I have considered

16   and benefited from the helpful exchange by Mr. Dayan and

17   Mr. Lewis, both of whom have helped shed light on the difficult

18   decision which I face.  I have considered the statements of

19   Mr. Baratov.

20               I have considered all of the factors set forth in

21   Section 3553(a).  I need not recount all that I have

22   considered, but I have considered each of the factors.

23               Albert Baratov began participating in a scheme to

24   defraud banks in 2009.  He and others submitted and caused to

25   be prepared and submitted applications and supporting

G184Bars

 1  documentation for commercial loans from banks.  The

 2  applications and documents were false and misleading.  From

 3  2009 to 2010, Baratov participated in about seven such

 4  fraudulent loan applications, in response to which the lending

 5  banks lent approximately 3.7 million.  Albert Baratov's take

 6  was $1.3 million.  These are not the wages of a messenger boy

 7  or a casual participant who is receiving some token payment for

 8  facilitating the crime.  He was an active participant in

 9  criminal activity which required him to think and to rethink

10  with regard to each of the fraudulent loans.

11          I have considered the history and characteristics of

12  this defendant.  Yes, he came to this country at age 15, and

13  I'm aware that he had difficulty adapting to America and

14  learning the English language, and I understand that he has

15  suffered from a gambling problem and that at times he will

16  drink to excess.

17          He is a 40-year-old man.  He was 35 when he was

18  engaged in this criminal conduct.  I understand that

19  individuals can lose their way, can be in different

20  circumstances, can go down the wrong path.  And at times, a

21  second chance is appropriate.

22          Would this be his second chance?

23          Well, as a young man, at age 19, he was stopped at the

24  corner of 63rd Drive and Woodhaven Boulevard, and the police

25  recovered a .32 caliber Smith & Wesson revolver from his left

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

G184Bars

1    front pants pocket.  He received a term of five years

2    probation, but that probation was revoked because of a

3    subsequent conviction.

4            Age 20, he was convicted of attempted possession of a

5    forged instrument, and in this situation he was found to be in

6    possession of a forged driver's license.  A credit card bearing

7    his name was found in the police vehicle.  It was purportedly

8    issued by the bank.  It was not, in fact, issued by the bank.

9    And the driver's license was also forged.

10           Age 22, attempted reckless endangerment in the first

11   degree.  Defendant and another individual entered the apartment

12   of the victim, announced a robbery while Mr. Baratov displayed

13   a handgun.  The defendants, that is Mr. Baratov and his

14   criminal colleague, demanded money and valuables, and

15   Mr. Baratov hit the victim with a gun.  His colleague bound the

16   victim and taped his mouth, and the victim heard one shot fired

17   in his apartment.  And a .22 caliber shell casing was recovered

18   inside the victim's apartment.  A loaded .22 caliber pistol,

19   along with the key and business cards were found on

20   Mr. Baratov's person.

21           Age 28, disorderly conduct, attempted assault in the

22   third degree.  The victim and the defendants became involved in

23   an oral argument, and the defendant, Mr. Baratov, struck the

24   victim with his hands and was then handed a baseball bat by his

25   accomplice.  The defendant struck the victim about the body

G184Bars

 1    with a small baseball bat, causing lacerations to the victim's

 2    left eye, left elbow, left biceps, and other contusions.

 3            Now, did the defendant have to engage in this conduct?

 4    He had a job where he was working as a personal trainer from

 5    2002 to 2007.  And for a while, he worked in real estate and as

 6    a commercial broker.

 7            His in-laws have been kind to him and have given him a

 8    job which pays between four and six thousand a month, earns

 9    about 60 thousand a year, but this is all since December 2010.

10            The sad answer here is that Mr. Baratov has had

11    several chances.

12            He is not the only individual who has appeared before

13    me who has had a difficult childhood, who has maybe not had the

14    parental guidance that would have benefited him, and it is sad

15    indeed that he is before me as he is today.

16            I realize he loves his son and now very much regrets

17    the crime that he committed.  It is a crime that permits the

18    imposition of a sentence of up to 30 years' imprisonment.

19            Based upon all of the surrounding circumstances, I

20    intend to sentence the defendant to 48 months' imprisonment,

21    three years' supervised release, waive the fine based on

22    limited assets, limited earning ability, impose a restitution

23    obligation of 1.3 million, a forfeiture of 1.3 million, special

24    assessment of $100.  The foregoing is sufficient but not

25    greater than necessary to achieve the purposes of Section

G184Bars

1  3553(a), which include respect for law, which this individual

2  has not shown at any time that I can see in his life, prevent

3  further crimes from this defendant, deter others from this sort

4  of activity.

5      I have considered the sentencing guidelines, policy

6  statement, and official commentary of the sentencing

7  commission.  I have considered them in an advisory manner and

8  recognize my obligation to avoid unwarranted sentencing

9  disparities, and I acknowledge I have various discretion.  This

10  is not an unwarranted sentence disparity.  I am to look at the

11  crime itself and consider whether there is a disparity relative

12  to others similarly situated, convicted of a similar crime.

13      I have also taken into account the sentencing imposed

14  upon others involved in the scheme, and I do not consider the

15  sentence here to be unwarranted.  It would be most appropriate

16  to give the bottom line of the guideline range, but I have gone

17  below the guideline range.

18      I will also say that I take into account the fact that

19  this defendant will likely be deported at the conclusion of his

20  sentence and barred from re-entry into the United States.

21      Does the defendant or his counsel have any objection

22  to the Court's proposed sentence or to the statement of reasons

23  for that sentence?

24      MR. DAYAN:  No, Judge.  I would like to be heard,

25  though, if we could have a date of surrender.

G184Bars

1           THE COURT:  We will talk about that in a minute.

2           Does the government have any objection to the Court's

3     proposed sentence or the statement of reasons for that

4     sentence?

5           MR. LEWIS:  No objection to that, your Honor.  I do

6     have clerical matters about what I have handed up to you, but

7     no objection.

8           THE COURT:  The defendant will please stand, and I

9     will impose sentence.

10          Albert Baratov, it is the judgment of this Court that

11    you are remanded to the custody of the United States Bureau of

12    Prisons to be imprisoned for 48 months.  Following release from

13    imprisonment, you shall be placed on supervised release for

14    three years, with the following terms and conditions:

15          You shall not commit another federal, state, or local

16    crime, nor illegally possess a controlled substance, nor

17    possess a firearm or destructive device.  You shall refrain

18    from any unlawful use of a controlled substance.  You shall

19    submit to one drug testing within 15 days of placement on

20    supervised release and at least two unscheduled drug tests

21    thereafter.  You shall cooperate with probation in the

22    collection of DNA.

23          The standard conditions of supervision 1 through 13

24    are imposed, with the following special condition:  You shall

25    provide the probation officer with access to any requested

G184Bars

1   financial information while the restitution and forfeiture

2   obligations remain unpaid.  You shall not incur new credit card

3   charges or open additional lines of credit without the approval

4   of the probation officer unless you're in compliance with the

5   installment payment schedule.  You shall obey the immigration

6   laws of the United States and comply with the directives of

7   immigration authorities.  You shall submit your person,

8   residence, place of business, vehicle, and any property or

9   electronic devices under your control to a search on the basis

10  that the probation officer has reasonable suspicion that

11  contraband or evidence of a violation of the conditions of

12  supervised release may be found.  The search must be conducted

13  at a reasonable time and in a reasonable manner.  Failure to

14  submit to a search may be grounds for a revocation.  You shall

15  inform other residents that the premises may be subject to

16  search pursuant to this condition.

17          You shall participate in an outpatient mental health

18  treatment program approved by the U.S. probation officer as a

19  result of your gambling behavior.  You shall continue to take

20  any prescribed medications unless otherwise instructed.  You

21  shall contribute to the cost of services based on your ability

22  to pay and the availability of third-party payments.

23          The Court authorizes the release of available

24  psychological and psychiatric evaluations and reports to the

25  health care provider.

G184Bars

1      You shall report to the nearest probation office

2  within 72 hours of release from custody.

3      Let me say for the record that the reason I have

4  imposed the term of supervised release is not because I believe

5  you will be present in this country to follow that term of

6  supervised release but as a precautory matter in the event

7  that my expectations in this regard turn out not to be true.

8  It also includes my direction that you comply with the

9  directives of immigration authorities.

10      It is further ordered that you shall pay to the United

11  States a special assessment of $100, which shall be due

12  immediately.

13      It is further ordered that you make restitution to the

14  Clerk, United States District Court, for the disbursement to TD

15  Bank in the amount of 1.3 million.  Restitution payments should

16  be forwarded to TD Bank, 9000 Atrium Way, Mount Laurel, New

17  Jersey, 08054, attention Anthony Zak.

18      The factors in the statute were considered in

19  formulating the payment schedule, which is set forth in the

20  order of restitution; and to the extent not otherwise set

21  forth, it shall be supplemented by a proposed order furnished

22  by the government within 30 days of today.  The restitution

23  shall be paid in monthly installments of 15 percent of gross

24  monthly income over the period of supervision, to commence

25  30 days after the date of judgment in this case.  You shall

G184Bars

1   notify the United States Attorney for this district within

2   30 days of any change of mailing or residence that occurs while

3   any portion of the restitution remains unpaid.

4          If you are engaged in Bureau of Prisons non-UNICOR

5   work, you shall pay $25 per quarter towards criminal financial

6   penalties.  However, if you participate in the BOP's UNICOR

7   program as a grade 1 through 4, you shall pay 50 percent of

8   your monthly UNICOR earnings towards the criminal financial

9   penalties, consistent with BOP regulations.

10          You shall forfeit to the United States any property

11   constituting or derived from the proceeds obtained directly or

12   indirectly as a result of the offense alleged in count one of

13   this information, including but not limited to the sum of

14   $1.3 million, as set forth in the consent preliminary order of

15   forfeiture and money judgment.

16          Mr. Baratov, you have the right to appeal the sentence

17   I have imposed in this case.  If you cannot afford the cost of

18   an appeal, you may apply for leave to appeal as a poor person.

19   The time limits are brief, and they are strictly enforced.  If

20   you request, the clerk of court will prepare and file a notice

21   of appeal on your behalf immediately.

22          Do you understand all of that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  As previously noted, the fine is waived

25   based on limited assets and limited earning ability.

G184Bars

1          Let me hear you, Mr. Lewis, on the subject of the two

2     orders.  Is there something you need to say in that regard or

3     want to say?

4          MR. LEWIS:  Just clerical matters, Judge.  The signed

5     original consent preliminary order of forfeiture money judgment

6     we handed up before the proceedings.

7          THE COURT:  I have it.  Any objection to my signing

8     that, Mr. Dayan?

9          MR. DAYAN:  No, Judge.

10          THE COURT:  All right.  It is signed.

11          MR. LEWIS:  As to the order of restitution, the one I

12     had sent earlier, Judge, said December 2015 at the bottom, so I

13     handed up a new one today with January.

14          THE COURT:  I have it here.

15          MR. LEWIS:  My apologies.  I missed the part you said

16     about the possibility of us submitting another order of

17     restitution.

18          THE COURT:  I don't think it is going to be necessary

19     because I laid out orally a schedule on the payments, which

20     takes care of that.

21          Mr. Dayan, any objection to the order of restitution?

22          MR. DAYAN:  None, Judge.  Thank you.

23          THE COURT:  All right.  Let me hear you on surrender

24     date.

25          MR. DAYAN:  Judge, if your Honor would indulge a

G184Bars

1    60-day request on surrender, please, Judge.

2              THE COURT:  Let me see what I can do.

3              MR. DAYAN:  I would definitely take longer.

4              THE COURT:  I understand.

5              MR. DAYAN:  If you could recommend Fort Dix, only

6    because of the close proximity it is to the family.

7              THE COURT:  All right.

8              MR. DAYAN:  Thank you, Judge.

9              THE COURT:  Surrender date in this case is set at

10   March 8, 2016, at 2 p.m., to the institution designated by the

11   United States Bureau of Prisons, and if none is designated,

12   then to the United States Marshal for this district.

13             I recommend to the Bureau of Prisons that it consider

14   housing Mr. Baratov at its facility at Fort Dix, New Jersey, in

15   order to facilitate family visitation.

16             MR. DAYAN:  Thank you.

17             THE COURT:  And that the Bureau of Prisons evaluate

18   Mr. Baratov for any appropriate alcohol or gambling programs

19   that it may have.

20             MR. DAYAN:  Thank you, Judge.

21             THE COURT:  Anything further from the government?

22             MR. LEWIS:  I would note that Mr. Baratov is currently

23   released on a $250,000 personal recognizance bond, co-signed by

24   three individuals.  I think some of those co-signers are

25   present today in the courtroom.  I just would suggest that the

G184Bars

1    Court remind the defendant of the consequences to the

2    co-signers if he doesn't appear.

3              THE COURT:  All right.  Mr. Baratov, you must

4    surrender at the time and place which I have indicated or you

5    will be guilty of a separate crime, failure to surrender, and

6    subject to imprisonment for up to five years plus a fine of

7    $250,000, in addition to the sentence I have imposed today.

8    Also, the persons who signed the bond and posted your bail

9    would lose the amount of the bond.  They would have to pay the

10   full amount of the bond.

11             Do you understand all that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  All right.  Please be seated.

14             Mr. Baratov, you're 40 years of age.  You will have

15   this sentence behind you in a not very distant time period.

16   You have your entire life in front of you.  You have to decide

17   what kind of life you want to live, whether you want to

18   continue with the ways of the past or you want to go in a

19   different direction.  You have to figure out how you're going

20   to make amends, not to just the persons and institutions who

21   were victims of the crime, but family members who have stood by

22   you in this time.  You have to figure out how to do that while

23   you're in.

24             While you're in, you will meet a colossal array of

25   people with very bad ideas.  You can jump on board the

G184Bars

1   bandwagon, and you will be back in a courtroom with a more

2   significant criminal history, spending a significant portion of

3   your time in prison.  That's assuming you're not deported, and

4   I expect that you will be deported.  You have a lot of planning

5   for the future to do, and with the help and assistance of those

6   who have stood by you, I think you can do it.

7           I wish you and your family the best.

8           We are adjourned.

9           (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25